NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2083
_____

UNITED STATES OF AMERICA

v.

KENNETH BRITTON
a/k/a KB
a/k/a Kalgon

Kenneth Britton,
            Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-05-cr-00443-006; 1-06-cr-00091-001)
District Judge: Honorable Yvette Kane

_____

Argued on April 8, 2014
Before: FISHER and SCIRICA, Circuit Judges, and MARIANI,[*] District Judge.

(Filed:  May 29, 2014)

Ronald A. Krauss, Esq.   ARGUED
Office of Federal Public Defender
100 Chestnut Street
Suite 306
Harrisburg, PA 17101
            Counsel for Appellant

_____

[*]The Honorable Robert D. Mariani, District Judge for the United States District Court for the Middle District of Pennsylvania, sitting by designation.

Peter J. Smith, United States Attorney
Stephen R. Cerutti, II, Chief of Criminal Appeals
Gordon A.D. Zubrod, Senior Litigation Counsel   ARGUED
Office of the United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108
                    Counsel for Appellee

_____

OPINION OF THE COURT
_____

MARIANI, District Judge.

Kenneth Britton appeals the judgment of the United States District Court for the Middle District of Pennsylvania sentencing him to 210 months' imprisonment following his guilty plea to multiple conspiracy counts for his involvement in an interstate prostitution ring. For the reasons that follow, we will affirm.

I.

Because we write primarily for the parties, who are familiar with the facts and the proceedings in this case, we will revisit them only briefly. Britton acted as a "pimp" in a prostitution ring, which occurred from February 2001 to December 2005, involved sixteen coconspirators and over 152 individuals, and spanned across several states. He sold the sexual services of young girls who often "had poor home lives, had dropped out of school, had been sexually abused, and had dismal hope for the future." Sealed App. 6.

One prostitute in the organization, Tana Adkins, carried the label of Britton's "bottom bitch." "Bottom bitches" are "prostitutes in charge of a pimp's other prostitutes, responsible for the recruitment, training, collection of earnings, forwarding the earnings

2

to the pimp, and oversight of other prostitutes." Id. In addition, "[w]hen called upon to do so, the 'bottom bitch' will defend her territory against other prostitutes and will attack 'renegades,' that is, prostitutes who work without a pimp." Id. As a result of her role in the prostitution ring, Adkins pled guilty to violating 18 U.S.C. § 371 for conspiracy to engage in interstate prostitution pursuant to a 33-count Superseding Indictment issued by a federal grand jury on December 8, 2005. Id. at 3.

The Superseding Indictment named fifteen other individuals involved in the prostitution conspiracy, including Britton. On March 1, 2006, Britton was again indicted and charged for acts occurring in 2002, including sex trafficking of minors and interstate transportation of a juvenile. These new charges were consolidated into the Superseding Indictment. On September 21, 2007, Britton pled guilty to violation of 18 U.S.C. § 371 for conspiracy to use interstate transportation with intent to engage in prostitution in violation of 18 U.S.C. § 2421; coercion and enticement in violation of 18 U.S.C. § 2422; and interstate travel in aid of prostitution in violation of 18 U.S.C. § 1952. He also pled guilty to sex trafficking of minors in violation of 18 U.S.C. § 1591 for the acts occurring in 2002.

In Britton's plea agreement, the Government agreed that "[u]pon completion of the cooperation, if the United States believes the defendant has provided 'substantial assistance' pursuant to § 5K1.1 of the United States Sentencing Guidelines, the United States may request the Court to depart below the guideline range." Supp. App. ("S.A.") 157. At sentencing, the parties noted that Britton had begun cooperating with the Government in another case, but that his cooperation was "not complete." S.A. 226.

3

Accordingly, the Government concluded that Britton had not provided sufficient assistance to warrant a presentence downward departure under U.S.S.G. § 5K1.1. However, the Government noted that a post-sentence departure under Rule 35(b) of the Federal Rules of Criminal Procedure for Britton's substantial assistance could be forthcoming. S.A. 226-27.

On January 21, 2009, the District Court sentenced Britton to 300 months' imprisonment. Within a year of sentencing, after Britton testified against another individual, the Government filed a post-sentence motion for downward departure under Rule 35(b). The District Court granted the motion and reduced Britton's sentence to 210 months' imprisonment. At sentencing, the District Court applied the 2007 Sentencing Guidelines to all of the conspiracy counts. The 2007 Guidelines included a 2004 amendment, resulting in a harsher penalty for Britton's 2002 crimes, which had been incorporated into the conspiracy ending in 2005. Britton now appeals.[1]

II.

On appeal, Britton contends that the District Court (1) erred by applying a four-level enhancement for his role as "organizer or leader of a criminal activity"; (2) plainly erred in allowing the Government to defer a motion for a downward departure for presentence substantial assistance until after sentencing; and (3) erred by applying the 2007 Sentencing Guidelines in violation of the ex post facto clause. We address each of Britton's arguments in turn.

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C § 1291.

A.

Britton first argues that the District Court erred by assigning him a four-level enhancement for his role as an "organizer or leader" in the prostitution ring. "We review a District Court's factual determinations underlying the application of the sentencing guidelines for clear error." United States v. Helbling, 209 F.3d 226, 242-43 (3d Cir. 2000). "[W]e exercise plenary review over legal questions involving the proper interpretation and application of the sentencing guidelines." Id. at 243. "We may affirm the rulings of the District Court for any proper reason that appears on the record even where not relied on by it." United States v. Perez, 280 F.3d 318, 337 (3d Cir. 2002).

Under U.S.S.G. § 3B1.1(a), a four-level enhancement is proper "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." To qualify as "otherwise extensive," a criminal scheme must involve "no less than the defendant and one participant the defendant led or organized." Helbling, 209 F.3d at 248 (citing U.S.S.G. § 3B1.1 app. n.2).[2] "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 app. n.1. Victims, including prostitutes, are often deemed "nonparticipants." See id. (defining nonparticipants); U.S.S.G. § 2G1.1 n.1 (defining victims). A victim "is considered a participant only if that victim assisted in the promoting of a commercial sex act or prohibited sexual conduct in respect to another victim." U.S.S.G. § 2G1.1 n.3.

---

[2] The test also requires qualifying "nonparticipants." Both parties agree that the nine or more prostitutes under Britton's control satisfy the "nonparticipants" prong.

The record reveals that Tana Adkins qualifies as a "participant" led or organized by Britton because she assisted in promoting prohibited sexual conduct with respect to other victims. See U.S.S.G. § 2G1.1 n.3; United States v. Evans, 272 F.3d 1069, 1089 (8th Cir. 2001) (citing U.S.S.G. § 2G1.1) (holding that a prostitute qualified as a "participant" because she "served as a trainer for [a] minor prostitute"). As a result of her role as Britton's "bottom bitch," Adkins pled guilty to conspiracy to engage in interstate prostitution. As a coconspirator, Adkins qualifies as a participant because she was "criminally responsible for the commission of the offense." See U.S.S.G. § 3B1.1 app. n.1; United States v. Levine, 983 F.2d 165, 168 (10th Cir. 1992) (holding that four individuals who had been recruited by the defendant-organizer and who pled guilty as codefendants were participants "sufficient to satisfy § 3B1.1"). Accordingly, the District Court did not err in applying a four-level sentence enhancement for Britton's role as an organizer or leader in the prostitution ring.

B.

Britton next argues that the Government improperly deferred making a presentence motion for downward departure under U.S.S.G. § 5K1.1 until after sentencing. Because Britton did not previously raise this argument, we review for plain error. See United States v. Vazquez-Lebron, 582 F.3d 443, 446 (3d Cir. 2009). "Plain error requires the defendant to demonstrate that the district court committed an error that is plain and that affect[s] substantial rights." Id. (internal quotation marks omitted).

The Government has "a power, not a duty, to file a [substantial-assistance] motion." Wade v. United States, 504 U.S. 181, 185 (1992). It abuses this power "only if

6

the refusal was based on bad faith, if a plea agreement otherwise required the government to consider offering a § 5K1.1 departure motion, or on an unconstitutional motive." United States v. Holman, 168 F.3d 655, 661 (3d Cir. 1999). Section 5K1.1 permits a district court to grant a downward departure "[u]pon motion of the government stating that the defendant has provided substantial assistance." U.S.S.G. § 5K1.1. To determine the appropriate sentence reduction, the court considers several factors, including "the government's evaluation of the assistance rendered" and "the timeliness of the defendant's assistance." Id. In addition, under Rule 35(b), the government may move for a downward departure "if the defendant, after sentencing, provided substantial assistance." Fed. R. Crim. P. 35(b) (emphasis added).

Here, the Government's decision to bring a post-sentence Rule 35(b) motion rather than a presentence § 5K1.1 motion was not improper. The Government did not defer bringing a § 5K1.1 motion; it expressly declined to make one given Britton's incomplete presentence participation. At sentencing, counsel for both parties discussed the potential for future participation and a corresponding motion under Rule 35(b) after completion of Britton's assistance. This complied with the plea agreement, which only gave rise to the Government's obligation to move for downward departure "[u]pon completion of the cooperation." S.A. 157; see also U.S.S.G. § 5K1.1 (listing factors including "the timeliness of the defendant's assistance"). Moreover, to the extent Britton argues that his incomplete presentence assistance compelled the Government to bring, and the District Court to consider, a presentence departure motion under § 5K1.1, that argument must fail. See Fed. R. Crim. P. 35(b)(3) (emphasizing that the court "may consider the

7

defendant's presentence assistance" to determine whether a post-sentence departure is warranted). Thus, the Government was not obligated to bring a presentence § 5K1.1 motion and the District Court did not plainly err by granting the Government's post-sentence Rule 35(b) motion.

C.

Finally, Britton argues that the District Court violated the ex post facto clause of the Constitution by applying the 2007 Sentencing Guidelines to his 2002 crimes. We exercise plenary review over legal interpretations of the Guidelines. United States v. Siddons, 660 F.3d 699, 703 (3d Cir. 2011). The ex post facto clause generally precludes the application of a Guideline that retroactively increases the punishment for a defendant's crimes. Peugh v. United States, 133 S. Ct. 2072, 2081 (2013). The date of the last overt act in a conspiracy as a whole, rather than the last overt act by the defendant, is the controlling date for ex post facto clause purposes. United States v. Rosa, 891 F.2d 1063, 1068-69 (3d Cir. 1989).[3]

Here, Britton's 2002 crimes were incorporated into the conspiracy, which ended in 2005. The District Court applied the 2007 Guidelines to all of the conspiracy counts because the Guidelines did not materially change between 2005 and 2007. The 2007 Guidelines reflected a 2004 amendment that resulted in a harsher penalty when applied to

---

[3] "Under the substantive law of conspiracy in this Circuit, one who willfully enters an agreement to commit a crime remains a participant in the agreement unless and until he communicates or otherwise objectively manifests a decision to renounce the agreement." Rosa, 891 F.2d at 1069 (citation omitted). Britton presents no evidence that he affirmatively renounced his participation before the conspiracy ended in 2005.

Britton's 2002 crimes. Under <u>Rosa</u>, this did not violate the ex post facto clause because the last overt act in the conspiracy occurred in 2005, after the 2004 amendment. <u>See</u> <u>Rosa</u>, 891 F.2d at 1065. Thus, the District Court did not err in applying the 2007 Guidelines.[4]

### III.

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be affirmed.

---

[4] We find no merit in Britton's argument that the Supreme Court's decision in <u>Peugh</u> invalidates the application of <u>Rosa</u>. In <u>Peugh</u>, the Court held that, although the Guidelines are now advisory and not mandatory, the ex post facto clause still applies to a retroactive application of a harsher Guidelines range. 133 S. Ct. at 2084. Nothing in <u>Peugh</u> supports Britton's counterintuitive argument that rules existing and constitutionally permissible when the Guidelines were mandatory violate the ex post facto clause because the Guidelines are now advisory. We will not hold so here. Nor will we revisit our sound precedent in <u>Rosa</u>.