**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-4598

_____

UNITED STATES OF AMERICA

v.

GREGORY PERRY,
                                        Appellant.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-09-cr-00080-001)
District Judge: Hon. Dennis M. Cavanaugh

_____

Submitted under Third Circuit LAR 34.1(a)
January 23, 2012

Before: FISHER, GREENAWAY, JR. and ALDISERT, Circuit Judges.

(Filed: February 1, 2012)

_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

Appellant, Gregory Perry, appeals a judgment of the United States District Court

for the District of New Jersey, sentencing him to 90 months' imprisonment after pleading

1

guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Perry contends that the District Court: (1) exceeded its discretion by granting the government's upward sentencing departure request for under-representation of criminal history pursuant to U.S.S.G. § 4A1.3(a); (2) plainly erred by failing to follow the ratcheting procedure when upwardly departing; and (3) plainly erred by failing to file a separate Statement of Reasons for imposing an upward sentencing departure pursuant to 18 U.S.C. § 3553(c)(2) and U.S.S.G. § 4A1.3(c)(1). After reviewing the record, we conclude that the District Court neither exceeded its discretion in granting the upward departure nor were its sentencing procedures plainly erroneous. We will therefore affirm the District Court's judgment.

## I.

Because we write primarily for the parties, we recount only the essential facts and procedural history.

## A.

Perry has had a long history of criminal behavior. From 1973 through 1978, he accumulated 11 different juvenile offense charges, including larceny (twice) and assault and battery (four times). In 1979, Perry was charged with aggravated assault and battery after he stabbed another youth. A court sentenced him to confinement in a youth correctional facility. While incarcerated, and after turning 19, Perry, tried as an adult, was convicted of aggravated assault for attacking a corrections officer and sentenced to an additional four-year term.

In June 1985 police arrested Perry for stabbing two bouncers who were escorting him out of a bar. After arriving at the police station that night, Perry physically attacked two police officers, inflicting injuries that required hospitalization of the officers. As a

result, Perry was charged with six offenses, convicted of those charges, and sentenced to 15 years' imprisonment.

In October of the same year, while awaiting trial on the June charges, Perry shot a man three times—twice in the head and once in the arm—as he attempted to steal his victim's money. He also beat the man in the head with his gun. As a result, a jury convicted Perry of attempted murder, armed robbery, possession of a weapon, and possession of a weapon without a permit, and sentenced him to 20 years' imprisonment.

Perry was paroled in 2005. In 2007 he was again arrested and later convicted of loitering to obtain drugs after he was found to be in possession of crack cocaine. Following his release in 2007, Perry was brought up on a series of currently pending charges.[1] Perry has not been convicted of—nor has he confessed to—any of these charges. While these charges pended, Perry committed the crime at issue in this case.

In May 2008 law enforcement officers determined that Perry was a suspect in a string of burglaries. On June 10, 2008, officers observed Perry make furtive movements as he entered a vehicle. The officers stopped him and he informed them that there was marijuana in the vehicle. A search of Perry's vehicle revealed, among other things, a loaded 9 mm handgun, heroin, marijuana, and burglar's tools.

## B.

Perry was charged in a one-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On May 25, 2010, pursuant to a written

---

[1] In March 2007 Perry was arrested for loitering in a public place. In May 2007 Perry was arrested for carjacking and fraudulent use of a credit card. In June 2007 Perry was arrested for two instances of burglary, as well as theft, theft by deception, receiving stolen property, possession of heroin, and escape. In July 2007 Perry was arrested for aggravated assault for using physical force against four police officers. Finally, in January 2008 Perry was arrested for burglary, attempted burglary, and credit card theft.

plea agreement, Perry pleaded guilty before the District Court. In the plea agreement, the parties agreed not to seek any departures or variances, except on the ground that Perry's criminal history category under-represented the seriousness of his criminal history and his likelihood of recidivism. Prior to sentencing, the Probation Office prepared Perry's Pre-Sentence Report ("PSR") and determined that Perry's base offense level was 21, with seven criminal history points, placing Perry in criminal history category IV. Perry's advisory Guidelines range was therefore calculated as 57 to 71 months' imprisonment. On October 14, 2010, the government requested a two-category upward departure pursuant to U.S.S.G. § 4A1.3, resulting in a Guidelines range of 77 to 96-months' imprisonment.

C.

The District Court held a sentencing hearing on November 23, 2010, and concluded that criminal history category IV was not "properly representative of [Perry's] criminal history," and that Perry's criminal history was "more typical of a level VI, for all the reasons stated: the violence, the pattern of violent behavior his whole life, the pending matters that are out there right after he gets out of prison . . . the old crimes that haven't been counted." App. 00042. The District Judge, a veteran judge with much experience, noted that Perry had "one of the worst criminal records I've seen, one of the most violent," App. 00040, and that Perry had spent nearly half of his life in jail because "[h]e tried to kill people," id. Despite receiving stiff sentences in the past, the Court also noted that Perry "hasn't exactly learned much and continues in his recidivist ways, carrying another gun here." App. 00041.

The District Court then applied the 18 U.S.C. § 3553(a) factors. Citing the seriousness of this offense, Perry's extensive criminal record, the need to deter Perry

4

from future crimes, and the "paramount" need to protect the public, the Court imposed a sentence of 90 months' imprisonment, which was within the newly calculated Guidelines range. App. 00058-00059. The Court issued a written Statement of Reasons explaining its upward departure and ultimate sentence.[2] Perry timely filed his notice of appeal.[3]

## II.

Perry contends that the District Court: (1) exceeded its discretion by granting the upward departure request; (2) plainly erred by failing to follow the ratcheting procedure when upwardly departing; and (3) plainly erred by failing to file a separate Statement of Reasons for the departure. We conclude that the District Court neither exceeded its discretion in granting the upward departure nor were its sentencing procedures plainly erroneous.

## A.

Perry first contends that the District Court exceeded its broad discretion by granting the government's request for an upward departure.[4] To show an abuse of

---

[2] This Statement of Reasons was filed under seal.

[3] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. See United States v. Cooper, 437 F.3d 324, 327 n.4 (3d Cir. 2006). We exercise plenary review of an interpretation of the Sentencing Guidelines. See United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). We review the District Court's sentence itself for abuse of discretion, see Gall v. United States, 552 U.S. 38, 46 (2007), and its factual findings for clear error, see Grier, 475 F.3d at 570. Unraised objections to a district court's sentencing and/or departure procedure are reviewed for plain error. See United States v. Vazquez-Lebron, 582 F.3d 443, 445 (3d Cir. 2009).

[4] The Supreme Court in United States v. Booker, 543 U.S. 220, 259-261 (2005), held that the federal Sentencing Guidelines are advisory. A sentencing court may not presume that the Guidelines range is the appropriate sentence in a given case. See Rita v. United States, 551 U.S. 347, 351 (2007). Instead, the sentencing court should employ the Guidelines range as a starting point and then, after considering the factors set forth in 18

5

discretion, a defendant must show that "the district court's decision is 'arbitrary, fanciful, or clearly unreasonable'—in short, where 'no reasonable person would adopt the district court's view.'" United States v. Green, 617 F.3d 233, 239 (3d Cir. 2010) (quoting United States v. Starnes, 583 F.3d 196, 214 (3d Cir. 2009)). Perry asserts that the Court erroneously considered factors—namely, previous convictions and pending charges—that he alleges were correctly excluded by the Probation Office in the calculation of his criminal history points, and, absent this consideration, no reasonable court would have upwardly departed by two criminal history categories.

Although the government acknowledges that the Probation Office correctly calculated Perry's criminal history points as seven and a category of IV, it contends that § 4A1.3 was designed to "provide flexibility in those cases where a point-by-point calculation of the defendant's criminal history category is not alone sufficient to reflect his culpability and dangerousness." United States v. Harris, 44 F.3d 1206, 1214 (3d Cir. 1995). As the District Court correctly found, that was exactly the case here. The Sentencing Commission permits an upward departure if "reliable information indicates that the criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). For the reasons that follow, we conclude that the District Court did not exceed its discretionary authority in granting the government's request for an upward departure.

1.

---

U.S.C. § 3553(a), it should impose a sentence that is "sufficient but not greater than necessary" to achieve the stated purposes of the statute. Gall, 552 U.S. at 50. The sentencing court therefore has broad discretion in sentencing.

Perry first contends that the District Court exceeded its discretion when it considered his juvenile criminal history—specifically, his 1979 juvenile adjudication—and his 1980 adult conviction in granting the upward departure. Perry asserts that, because these convictions correctly received no criminal history points, they should not be used to justify an upward departure. Because both the 1979 juvenile adjudication and the 1980 adult conviction require the same analysis, we discuss them simultaneously and conclude that the District Court did not exceed its discretion when considering these convictions.

Although juvenile adjudications may not be included in a criminal history calculation, a sentencing court may consider them to determine the appropriateness of an upward sentencing departure. See United States v. Thomas, 961 F.2d 1110, 1116 (3d Cir. 1992). Perry asserts, however, that a defendant's juvenile adjudications may only be considered by a sentencing court "if the juvenile convictions were for conduct similar to the instant offense." Id. Perry contends that the sentencing court exceeded its discretion when it considered his 1979 juvenile adjudication, because his juvenile conviction for stabbing another youth is not similar to the instant offense of possessing a firearm by a convicted felon.

Perry also asserts that the District Court exceeded its discretion when it considered his 1980 adult conviction, because the Guidelines expressly excluded it as time-barred in its calculation of criminal history points. See U.S.S.G. § 4A1.2(e). He contends that "the sheer passage of time militates against" considering the juvenile adjudication as well as the 1980 adult conviction, because it is "simply unfair, unjust and plain prejudicial to punish Mr. Perry, a fifty year old man, for what he did more than thirty years ago." Appellant Br. at 13; see also U.S.S.G. § 4A1.2(d), Application Note 7.

7

The District Court did not exceed its discretion because the Guidelines explicitly provide that such uncounted but "similar, or serious dissimilar, criminal conduct, . . . may [be] consider[ed] . . . in determining whether an upward departure is warranted under § 4A1.3." U.S.S.G. § 4A1.2 cmt. n.8.[5] Perry's 1979 juvenile adjudication for aggravated assault and battery resulted after he stabbed another youth five times. His 1980 adult conviction resulted after he physically attacked a corrections officer. Contrary to Perry's contentions, to ignore such "serious criminal conduct 'would serve merely to obscure his serious history of criminality and the likelihood that he would commit crimes in the future.'" United States v. Williams, 989 F.2d 1137, 1141 (11th Cir. 1993) (quoting United States v. Gammon, 961 F.2d 103, 108 (7th Cir. 1992)). This is especially true in light of Perry's numerous and more recent convictions involving violent crimes. We therefore conclude that the District Court did not exceed its discretion when it considered Perry's juvenile adjudication as well as his previous, uncounted conviction in granting the government's request for an upward departure.

2.

Perry next contends that the District Court exceeded its discretion when it considered his June and October 1985 convictions in granting the upward departure. Because Probation correctly assessed three criminal history points for both of his 1985 convictions—the government concedes this—Perry contends that these convictions should not be used to justify an upward departure. Perry asserts that his criminal history

---

[5] As Perry correctly points out, Thomas limited consideration of uncounted juvenile offenses to those that were "similar" to the present offenses. 961 F.2d at 1117. In doing so, however, the Thomas Court relied on U.S.S.G. § 4A1.2 cmt. n.8, which, at that time, provided that uncounted convictions could only be considered if "similar," U.S.S.G. § 4A1.2 cmt. n.8 (1991). The Guidelines were amended on November 1, 1992, to include dissimilar, serious prior offenses.

has not been under-represented, because his 1985 convictions resulted in the maximum punishment allowed by state law: a prison term of 35 years with a 17.5-year period of parole ineligibility. As such, an upward departure based upon two convictions for which he has already served time is an abuse of the sentencing court's discretion.

The government cites numerous not precedential opinions in which we have affirmed upward departures pursuant to § 4A1.3 because a defendant's criminal history category substantially under-represents both the seriousness of the defendant's criminal history and the likelihood that he will recidivate. See United States v. Hicks, 273 F. App'x 121, 123 (3d Cir. 2008) ("We are satisfied that the District Court properly considered the nature of [defendant's] prior convictions in determining that the sentence established by the Sentencing Guidelines underrepresented [defendant's] criminal history . . . .") (emphasis added); see also United States v. Adams, 385 F. App'x 114, 117 (3d Cir. 2010) (holding that the sentencing court's upward departure was reasonable because defendant's "prior convictions demonstrated a pattern of violent behavior"). And that is what we will do here.

We cannot stress enough that § 4A1.3 was designed to "provide flexibility in those cases where a point-by-point calculation of the defendant's criminal history category is not alone sufficient to reflect his culpability and dangerousness." Harris, 44 F.3d at 1214. Accordingly, the District Court found that the criminal history points for Perry's 1985 convictions substantially under-represented the seriousness of his criminal history; in June 1985 Perry stabbed his victims and later that same night, he physically attacked two police officers, sending them to the hospital. Even more serious, four months later, Perry shot a man twice in the head and once in the arm before bludgeoning him with the gun. As the District Judge stated at sentencing, Perry has spent nearly half of his life in jail

9

because "[h]e tried to kill people." App. 00040. We, therefore, conclude that the District Court did not exceed its discretion in imposing an upward departure when sentencing Perry to 90 months' imprisonment.

3.

Third, Perry contends that the District Court exceeded its discretion when it granted the upward departure after taking into consideration the laundry-list of charges pending against him at the time he was arrested for the current offense. Perry asserts that pending charges may not support an upward departure from the Guidelines "unless the conduct underlying those charges is admitted." United States v. Berry, 553 F.3d 273, 283-284 (3d Cir. 2009) (citation omitted). Because the information concerning Perry's pending charges was nothing more than a mere recitation of the police arrest reports—not supported by a confession, conviction, or independent investigation—Perry contends that it cannot be considered "reliable information" within the plain meaning of § 4A1.3(a). See United States v. Williams, 989 F.2d 1137, 1142 (11th Cir. 1993) ("[A]n arrest record standing alone is not sufficiently reliable to support a departure.").

But this does not end our inquiry. The Guidelines specifically allow upward departures where "the defendant was pending trial or sentencing on another charge at the time of the instant offense," U.S.S.G. § 4A1.3(a)(2)(D), as such brazen conduct clearly indicates an increased "likelihood that the defendant will commit other crimes," U.S.S.G. § 4A1.3(a)(1); see also United States v. Koeberlein, 161 F.3d 946, 952 (6th Cir. 1998).

Perry's reliance on Berry is misguided because the District Court did not use the arrest record to assume that Perry had committed other crimes. See U.S.S.G. § 4A1.3(a)(3) (precluding use of "prior arrest record itself"). Rather, consistent with § 4A1.3(a)(2)(D), the District Court used Perry's commission of this offense while other

10

charges were pending to show that he had an increased likelihood of recidivism. The teachings of Berry do not preclude this use. See 553 F.3d at 281.

Moreover, the information about Perry's pending charges was far from "bare," as the PSR detailed a mountain of evidence demonstrating the basis for the pending charges. See Berry, 553 F.3d at 283-284 & n.8 (explaining that a court can consider the PSR's description of the conduct underlying the arrests). In any event, even if the District Court erred in considering Perry's pending charges, the error was harmless. See United States v. Walker, 98 F.3d 944, 948 (7th Cir. 1996) (holding that the sentencing court's error in considering defendant's arrests was harmless in light of the court's "strong remarks about the defendant's convictions and about the fact that the defendant could be described only as a career criminal").

Given (1) Perry's pattern of violent behavior, (2) his commission of this offense after racking up pending charges immediately after being released from prison, (3) the serious older offenses that had not been counted, and (4) his demonstrated recidivism, the District Court did not exceed its discretion in finding that Perry's criminal history substantially under-represented his likelihood of recidivism. We will therefore affirm the sentence.

### III.

Perry also contends that the District Court plainly erred by failing to follow the ratcheting procedure when upwardly departing from category IV to category VI. Because Perry did not object at sentencing, he bears the burden of showing plain error.[6] In

---

[6] As such, Perry must show: "(1) error, (2) that is plain or obvious, and (3) that affects [his] substantial rights." United States v. Goodson, 544 F.3d 529, 539 (3d Cir. 2008) (citations omitted).

11

granting an upward departure for under-representation of criminal history, § 4A1.3 directs sentencing courts to "determine the extent of a departure . . . by using, as a reference, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." U.S.S.G. § 4A1.3(a)(4)(A). We have interpreted this guidance as requiring the District Court to follow a "ratcheting" procedure, whereby it "proceed[s] sequentially through the categories and must not move to the next category until it has found that a prior category still fails adequately to reflect the seriousness of the defendant's history." United States v. Cicirello, 301 F.3d 135, 145 (3d Cir. 2002) (citations omitted). Because the District Court's reasoning made clear why it was upwardly departing by two criminal history categories, we will affirm the sentence.

Perry contends that the District Court committed plain error when it "leap-frogged past criminal history category V," Appellant Br. at 22, which "seriously affect[ed] the fairness, integrity, [and the] public reputation of [the] judicial proceedings," id. at 24 (quoting Goodson, 544 F.3d at 539 (internal quotations and citations omitted)). We have explained, however, that the ratcheting procedure "does not 'require the district court to go through a ritualistic exercise in which it mechanically discusses each criminal history category it rejects en route to the category it selects.'" Harris, 44 F.3d at 1212 (quoting United States v. Lambert, 984 F.2d 658, 663 (5th Cir. 1993) (en banc)). Rather, a sentencing court complies with the ratcheting procedure if its "reasons for rejecting each lesser category [are] clear from the record as a whole." Id.

Here, although the District Court did not explicitly discuss criminal history category V, its reasons for rejecting that category are clear from the record as a whole. The Court cited Perry's "violence" and his "pattern of violent behavior his whole life,"

12

App. 00042, including an attempted murder conviction after he shot his victim in the face and bludgeoned him, two separate instances of stabbing people, and at least three incidents of physically attacking law enforcement officers. The Court also referred to the litany of "pending matters that are out there right after he gets out of prison," App. 00042, noting that Perry "has shown a history of recidivism," App. 00058. Indeed, to repeat, Judge Cavanaugh, who has been a district court judge for 11 years and served as a magistrate judge from 1993 through 2000, stated that Perry's criminal history was "one of the worst criminal records I've seen, one of the most violent." App. 00040. Based on these findings, it is patently clear why the District Court found that Perry's criminal history "is more typical of a level VI." App. 00042.[7] The District Court, therefore, did not commit plain error when it granted a two-category upward departure.

IV.

Finally, Perry contends that the District Court plainly erred by failing to adequately explain its reasons for granting the upward departure.[8] A sentencing court must comply with § 3553(c)(2) by issuing a written statement explaining why it departed from the Guidelines range. See United States v. Ausburn, 502 F.3d 313, 329 n.33 (3d Cir.

---

[7] Perry contends that, had the sentencing court explicitly performed the ratcheting analysis, it would have determined that category V was the proper criminal history category based on his mathematical calculation of the additional points he would be assessed for his 1980 conviction and his pending charges. But, once again, he misunderstands the nature of § 4A1.3. As we explained in Harris, § 4A1.3 was "intended to provide flexibility in those cases where a point-by-point calculation of the defendant's criminal history category is not alone sufficient to reflect his culpability and dangerousness." 44 F.3d at 1214. Indeed, we have rejected the argument that sentencing courts are constrained under § 4A1.3 to depart to the criminal history category that would result from a mathematical calculation of the defendant's criminal history using uncounted convictions or pending charges. See id. This contention is therefore meritless.

[8] Because Perry did not raise this objection during sentencing, we will review for plain error. See Vazquez-Lebron, 582 F.3d at 445.

13

2007). Perry contends that the District Court failed to state specific reasons for the imposition of a sentence in excess of the Guidelines range, thereby prohibiting any meaningful appellate review of the sentence. See Gall, 552 U.S. at 50; see also United States v. Lewis, 424 F.3d 239, 246 (2d Cir. 2005) (holding that a sentence imposed without complying with § 3553(c)(2) constitutes plain error). Perry's contentions lack merit because the District Court complied with the § 3553(c)(2) requirement by issuing a written Statement of Reasons with its Judgment, explaining the basis for this departure. Although the Statement of Reasons was filed under seal, the sentence has received meaningful appellate review. Because the written reasons incorporate the Court's oral comments at the sentencing hearing, which we conclude are adequate to demonstrate the substantive reasonableness of the challenged sentence, we need not discuss this point further. We conclude that the District Court did not commit any error because it complied with § 3553(c)(2) when it issued a written Statement of Reasons for upwardly departing, and we will therefore affirm the sentence of 90 months' imprisonment.

* * * * *

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. We conclude that the District Court did not exceed its discretion in granting the request for an upward departure and its sentencing procedures were not plainly erroneous. The judgment of the District Court will therefore be AFFIRMED.